MICHAEL BAILEY
United States Attorney
District of Arizona
BEVERLY K. ANDERSON
Arizona State Bar No. 010547
NICOLE P. SAVEL
Arizona State Bar No.015958
Assistant United States Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
Telephone: 520-620-7330
Email: bev.anderson@usdoj.gov
Email: nicole.savel@usdoj.gov
Attorneys for Plaintiff

JOHN C. DEMERS
Assistant Attorney General
National Security Division
WILLIAM MACKIE
Trial Attorney
Counterintelligence and Export Control Section
950 Pennsylvania Ave., NW
Washington, DC  20530

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR 19-00472-TUC-RM (JR) |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| vs. | |
| Wei Sun, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, Wei Sun, hereby agree to dispose of this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 1 of the First Superseding Indictment charging the defendant with a violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and Title 22, Code of Federal Regulations (C.F.R.), Sections 121.1, 123.1, 125.2 and 127.1, Export of Arms and Munitions.

2. **MAXIMUM PENALTIES**

    a.    A violation of 22 U.S.C. § 2778(b)(2) and (c) is punishable by, a maximum term of imprisonment of 20 years, a maximum fine of $1,000,000.00, or both, and a term of supervised release of up to 3 years.

    b.    According to the United States Sentencing Guidelines ("U.S.S.G." or the "Sentencing Guidelines") issued pursuant to the Sentencing Reform Act of 1984, the Court shall order the defendant to:

    (1)    make restitution to any victim of the offense pursuant to 18 U.S.C. § 3663 and/or 3663A, unless the Court determines that restitution is not appropriate;

    (2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a fine is not appropriate;

    (3)    serve a term of supervised release when required by statute or when a sentence of imprisonment of more than one year is imposed (with the understanding that the Court may impose a term of supervised release in all other cases); and

    (4)    pay upon conviction a $100 special assessment for each count to which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

    c.    The Court is required to consider the Sentencing Guidelines in determining the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court is free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crime(s) of conviction, unless there are stipulations to the contrary that the Court accepts.

    d.    The defendant recognizes that pleading guilty may have consequences with respect to defendant's immigration status if the defendant is a recently naturalized United States citizen or is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense(s) to which defendant is pleading guilty. The defendant nevertheless affirms that defendant wants to plead guilty regardless of any immigration consequences that this plea entails, even if the consequence is the defendant's automatic removal from the United States.

3.   **AGREEMENTS REGARDING SENTENCING**

   a.   <u>Stipulation, Base Offense Level Calculation</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's base offense level is a level 26, based on U.S.S.G. § 2M5.2(a)(1).

   b.   <u>Stipulation</u>. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's sentence shall not exceed the low end of the sentencing range as calculated under U.S.S.G. § 1B1.1(a). This stipulated sentencing cap will not change based on departures considered under U.S.S.G. § 1B1.1(b). Nothing in this agreement shall preclude defendant from moving for a downward departure, variance, or sentence below the cap, or the court from imposing a sentence below the cap.

   c.   <u>Acceptance of Responsibility</u>. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. §3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. §3E1.1(b)

   d.   <u>Non-Binding Recommendations</u>. The defendant understands that recommendations are not binding on the Court. The defendant further understands that the defendant will not be permitted to withdraw the guilty plea if the Court does not follow a recommendation.

   e.   <u>Assets and Financial Responsibility</u>. The defendant shall make a full accounting of all assets in which the defendant has any legal or equitable interest. The defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or transfer any such assets or property before sentencing, without the prior approval of the United States (provided, however, that no prior approval will be required for routine, day-to-day expenditures). The defendant also expressly authorizes the United States Attorney's

Office to immediately obtain a credit report as to the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. The defendant also shall make full disclosure of all current and projected assets to the U.S. Probation Office immediately and prior to the termination of the defendant's supervised release or probation, such disclosures to be shared with the U.S. Attorney's Office, including the Financial Litigation Unit, for any purpose. Finally, the defendant shall participate in the Inmate Financial Responsibility Program to fulfill all financial obligations due and owing under this agreement and the law.

**4.     AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.     Pursuant to Fed. R. Crim. P. 11(c)(1)(A), the United States, at the time of sentencing, shall dismiss the following charges: Counts 2 through 5 of the First Superseding Indictment in CR 19-00472-TUC-RM (JR).

b.     This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with the investigation that led to the Indictment in CR 19-00472-TUC-RM (JR).

c.     This Plea Agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.     COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.     If the Court, after reviewing this Plea Agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.     If the defendant's guilty plea or Plea Agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional

restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

6. **WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

7. **DISCLOSURE OF INFORMATION**

   a. The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

   b. Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

   c. The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

## 8. FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS

a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

## 9. ELEMENTS

### Arms Export Control Act (22 U.S.C. § 2778)

To prove the crime of Export of Arms and Munitions in violation of 22 U.S.C. § 2778(b)(2), the Government must prove the following elements beyond a reasonable doubt:

1. That the defendant knowingly exported, attempted to export, or caused to be exported, a defense article from the United States;

2. The defense articles were listed on the United States Munitions List and a license or other written authorization from the Department of State was required for the defendant to export the defense article;

3. That the defendant exported, attempted to export, or caused to be exported, the defense article without first obtaining a license or written approval from the State Department; and

  4. That the defendant acted "willfully," that is, that the defendant knew such license or written approval was required for the export of these defense articles and intended to violate the law by exporting them without such license.

**10.**   **<u>FACTUAL BASIS</u>**

  a. The defendant agrees that following facts are true, and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

> From approximately January 12, 2009, through January 15, 2019, the defendant Wei Sun was employed by Raytheon Missile Systems (RMS), as an Electrical Engineer at the RMS facility in Tucson, Arizona. During this time, RMS both developed and produced a variety of missiles for use by the United States military, including ground-to-air missiles, air-to-air missiles, air-to-ground missiles, and ballistic missile defense systems. These missiles, component parts, and certain associated technical information that was developed and used in the production, maintenance, and operation of these missiles (also known as "technical data") constituted "defense articles" as defined under the Arms Export Control Act (AECA), 22 U.S.C. § 2778 and the implementing regulations known as the International Traffic in Arms Regulations (ITAR), 22 C.F.R. Parts 120-130. Pursuant to the AECA and the ITAR, these defense articles were subject to export control restrictions, including, a prohibition on the export of any ITAR controlled defense article from the United States by any person without a license or written authority from the U.S. Department of State.
>
> RMS undertook a range of research and development work at the RMS Tucson facility where Sun worked, including the testing of a wide range of RMS missile electrical component parts. As an Electrical Engineer, Sun worked on a range of work projects that included testing materials he knew were electrical components designed for, and used in, the operation of RMS missiles. While at RMS, Sun received multiple training and instruction regarding the AECA, the ITAR, and the nature of export controls with regard to RMS products and related information that constituted defense articles.
>
> In connection with his employment with RMS, Sun was granted and possessed a SECRET level security clearance due to the highly sensitive nature of his work on RMS technology. To facilitate Sun's work duties at RMS, RMS issued a HP EliteBook 840 computer, Serial Number RA097784 (the "RMS Computer") to Sun, which he routinely used for his RMS work.

Over time Sun stored a range of RMS work related information on his RMS Computer, which he knew included files relating to research and development work concerning RMS missiles, components, and related technical data. Included in Sun's RMS Computer was a number of stored computer files that contained technical data that were ITAR controlled defense articles, as has been confirmed by the relevant licensing authority, the Department of State. This included a file identified as "crn_fpga_CB_v10020043_users_guide.docx," which was a report titled "Advanced Medium Range Air to Air Missile - Common Remote Terminal and Navigation FPGA User's Guide" ("File No. 1").

On or about December 18, 2018, Sun travelled to China on a personal trip, and returned to the United States in early January 2019. When Sun travelled to China, Sun transported his RMS Computer with him. While he stayed in China, Sun had the RMS Computer with him. The RMS Computer which Sun transported to China in December 2018 contained the ITAR controlled File No. 1. From his personal knowledge, training, and work experience, as well as the information contained in the RMS report stored in File No. 1, Sun knew that the information was subject to ITAR controls.

The transport of File No. 1 out of the United States in December 2018 constituted an "export" of a defense article. At no time did Sun apply for, or did the Department of State issue, a license or other written authority to export File No. 1 from the United States.

Accordingly, beginning on or about December 18, 2018, in the District of Arizona and elsewhere, Sun knowingly and willfully exported and caused to be exported from the United States to the People's Republic of China, defense articles designated on the United States Munitions List without first having obtained from the Department of State a license or written authorization for such export, in violation of the AECA.

b.   The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this Plea Agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

I have read the entire Plea Agreement with the assistance of my attorney. I understand each of its provisions and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

This written Plea Agreement, and any written addenda filed as attachments to this Plea Agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and

may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

I am satisfied that my defense attorney has represented me in a competent manner.

I fully understand the terms and conditions of this Plea Agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this Plea Agreement.

2/14/20
Date

/s/ Wei Sun
Wei Sun
Defendant

### APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the Plea Agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written Plea Agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the

requirements of Fed. R. Crim. P. 11.

Date 2/14/20

CAMERON A. MORGAN
Attorney for Defendant

**APPROVAL OF THE UNITED STATES**

I have reviewed this matter and the Plea Agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

MICHAEL BAILEY
United States Attorney
District of Arizona

Date 2/14/2020

BEVERLY K. ANDERSON
NICOLE P. SAVEL
Assistant United States Attorney'

JOHN C. DEMERS
Assistant Attorney General
National Security Division
WILLIAM MACKIE
Trial Attorney
Counterintelligence and Export Control Section

- 11 -