**CAMERON A. MORGAN**
**Attorney at Law**
4356 N. Civic Center Plaza, Ste. 101
Scottsdale, AZ  85251
(480) 990-9507 ♦ Fax (480) 947-5977
*Arizona State Bar No. 006709*
e-mail:  camerona.morgan@hotmail.com
Attorney for Defendant Sun

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff**,**<br><br>     v.<br><br>Wei Sun,<br><br>          Defendant**.** | No. **19-cr-00472-001-TUC RM (JR)**<br><br>**SUPPLEMENTAL SENTENCING MEMORANDUM** |

Due to the limited time scheduled for the sentencing hearing, Defendant hereby submits some additional materials and argument about the "the importance and significance of the AAMRAM weapons system in general…" as is referenced in the Government's sentencing memorandum.  Since defendant will not have the time or an expert to submit general information on this subject, he provides non-classified documents for the court's consideration.

In terms of national security issues undersigned counsel submits that 1) because the Chinese already have full access to Raytheon's AIM-120 missile through their ally Pakistan and perhaps others, they do not have any use for the technical information on the defendant's computer; 2) the nature of the information at issue is outdated and outmoded in the field of missile technology and 3) the information is ubiquitous in terms of information processing,

in that every computer based product has circuit boards and testing processes for those boards.

As a result of these issues, defense counsel suggests that the court should not consider the taking of a laptop to China with limited technical information that the Chinese already have access to as a great threat to national security.

The AIM-120 Advanced Medium-Range Air-to-Air Missile (AAMRAM) is a Raytheon missile developed in the 1980s and put in service in the 1990s. See Exhibit 1, truncated Wikipedia article on AIM-120. The missile had been sold to numerous NATO partners and other countries including Bahrain, Bulgaria, Chile, Czech Air Force, Hungary, Israel, Jordan, Kuwait, Morocco, Malaysia, Oman, Qatar, Romania, Taiwan, Thailand, and UAE. Id. There are several different versions of the missile that are currently in use on numerous older aircraft. This missile is sold to approximately 39 other countries all over the world, including to China's closest military ally, Pakistan. It has been reported that the termination of production is scheduled for 2026.

The AIM-120 is being been replaced by the AIM-260 built by Lockheed Martin. This new missile is currently in production and is used on the F-18, F-22 and F-35 aircraft. Another long-range missile is also currently in development. See Exhibit 2, truncated Wikipedia article on the AIM-260. The development of these new missiles is reportedly in response, in part, to the Chinese development of the PL-15 and PL-21 missiles, which are believed to have a longer range than the AIM-120. See Exhibit 3, Wikipedia article on PL-15. It is unclear if the AIM-260 will be sold to any other nations.

China has had a joint defense development agreement with Pakistan to produce the JF-17 jet fighter and numerous other military articles including nuclear weapons, ballistic missiles, other aircraft and conventional weapons for many years. In 2011 China and Pakistan put the JF-17 fighter in service and began selling it to other countries. Since then the Chinese have introduced at least three new air to air missiles of their own, the PL-12, 15 and 21.

In 2007 Raytheon and the U.S. entered into a $724 million contract to sell F-16 fighter aircraft armaments, including 500 AIM-120s and 500 Sidewinders, to Pakistan in for the F-16s that had previously been sold to Pakistan. See Exhibit 4, Congressional Research Service list of arms sold to Pakistan since 2001.

At the time of this weapons sale, Pakistan was engaged in a joint development agreement with China to produce the Chinese designed JF-17 fighter in Pakistan. At the same time, China was engaged in assisting Pakistan with producing nuclear weapons and ballistic missiles. See Exhibit 5, truncated Wikipedia article on JF-17 fighter. See Exhibit 6, excerpt of testimony of Lisa Curtis, Former Senior Research Fellow, Asian Studies Center, before the 1999 Select Committee (see below).

The Government mentioned in its Memorandum the report of the 1999 Select Committee on U.S. National Security and Military Commercial Concerns of the People's Republic of China. Exhibit 7 is a portion of the report that deals with methods used by the PRC to acquire U.S. military technology. A prominent method is to obtain the transfer of military technology and information from third world countries. Exhibit 6 is an excerpt of the testimony of Lisa Curtis, Former Senior Research Fellow, Asian Studies Center, before

the committee. She outlined the close cooperation, information transfers and joint development agreements of China and Pakistan on nuclear weapons, ballistic missiles, conventional weapons and aircraft.

The military relationship between China and Pakistan is so close that in August 2020 it was announced that China just sold four of its most advanced warships to Pakistan. See Exhibit 8, Hindustan Times news article dated 8/24/20.

It is difficult to believe that Pakistan would not allow China, its revered military/industrial partner and ally, to have full access to the AIM-120 missile, especially when they were jointly developing and building a fighter plane that required air to air missiles for its armament. In a jet fighter engagement that suggests that the Chinese did have such access, a Pakistani jet shot down an Indian jet in 2019. The Pakistani jet was either a JF-17 (per Pakistan) or an F-16 (per India). The remains of an AIM-120 with its contract number were seized by India after the dog fight and shown to the press. Either the Pakistanis used an F-16 in violation of use of force agreements with the U.S. or the JF-17 was modified by its Chinese designers to accept AIM-120 missiles.  See Exhibit 9, 3/25/19 article from The Economic Times. In either case, this incident demonstrates that Pakistan has little regard for any U.S. constraints on the use of military equipment set forth in bilateral agreements.

On 12/11/19 the U.S. News and World Report ran an article that "State Department Reprimanded Pakistan for Misusing F-16s." See Exhibit 10. According to the article, Undersecretary of State Andrea Thompson wrote a complaint to the Pakistani Air Chief Marshall about moving the F-16s and their armament to bases that were not approved under the use of force agreements during the Indian incident. In addition, she claimed that it had

been four years "since (U.S. officials) had been allowed to perform an assessment of the security vulnerabilities on the Pakistani bases (where the F-16s and AIM-120s are kept)." This mild rebuke mentioned nothing about using the weapons to shoot down the Indian jet in violation of the use of force agreements.

Whether the Pakistanis turned over the AIM-120 to the Chinese, or they were able to get it from another country such as a former Warsaw pact member or a Asian country who has the AIM-120, the result is the same. This missile is available to the Chinese through various sources and it would be naive to believe that they do not have full access to it. They do not need to copy the technical information about circuit boards from the computer of a visiting engineer, they have direct access to the missile.

Second, the court should consider the nature of the technical information at issue. The defendant was an engineer working on circuit board testing equipment. The most important of the technical articles at issue is about message processing hardware and, as the Government acknowledges, this relates to "information that has been developed and tested over the course of decades." Govt. Memo p. 9, l. 7. In other words, in the information age where information processing technology changes can occur over the course of weeks or months, this is outdated technology that is being scrapped for a new and better missile from Lockheed. No one wants decades old hardware or software in an arms race.

Third, the information at issue is ubiquitous. The Chinese know about the components of a missile and make pretty good ones themselves. Circuit boards and testing equipment are necessary in every computer based product and every corporation making these products has

them. There really isn't much difference between Chinese circuits and U.S. circuits except that many of the ones in U.S. products may have been made in China. Just ask Apple.

In summary, there can be little doubt that Pakistan has, or would, allow its chief military ally full access to the AIM-120 while developing numerous military weapons with the Chinese government, if the Chinese wanted such access. Furthermore, the weapon was sold to Pakistan with the express approval of the U.S. government who had full knowledge of any risks to U.S. national security. The ITAR information on the defendant's computer concerned information processing for this older missile that is being retired. The hardware and software for information processing is common to all computing devices. While there is always some security risk to the dissemination of ITAR technical information, no such dissemination occurred in this case and the availability of better information from other sources militates against any significant security risk in this case.

Dated this 13th day of November, 2020.

/s/Cameron A. Morgan
Cameron A. Morgan
Attorney for Defendant

**Certificate of Service**
I hereby certify that on the 13th day of November, 2019, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing. Upon e-filing copies were electronically transmitted to all registered CM/ECF users on this case.

By /s/ Dawn-Marie Kenney